# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7117 | **DATE** | February 24, 2004 |
| **CASE TITLE** | USA ex rel Ike J. Easley, Jr.    v    Charles L. Hinsley, Warden | | |

**MOTION:**   [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Hearing

(5) ☐ Status hearing

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]

   Memorandum opinion and order entered.    Accordingly, petitioner's petition for writ of habeas corpus is denied.  This case is terminated and any pending motions are denied as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| X | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | FEB 25 2004 | date docketed | | 41 |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | CLERK | date mailed notice | | |
| GDS | courtroom deputy's initials | on FEB 25 2004 AM 11:51 | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel., IKE J. EASLEY, JR., #N-21627 | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | No.   01 C 7117 |
| CHARLES L. HINSLEY, Warden Tamms Correctional Center, | ) ) ) | Judge Robert W. Gettleman |
| Respondent. | ) ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

After a jury trial in the Circuit Court of Cook County, petitioner, Ike Easley, Jr. ("Easley"), was convicted of first-degree murder and was sentenced to death. After his direct and post-conviction appeals to the Illinois Supreme Court, Easley petitioned this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On January 11, 2003, former Illinois Governor George Ryan commuted Easley's death sentence to natural life in prison without the possibility of parole. Before this court is Easley's second amended petition for a writ of habeas corpus filed after the commutation of his death sentence. For the reasons stated below, the court denies Easley's habeas petition in its entirety.

**I.   BACKGROUND**

**A.   Procedural History**

Following a jury trial in the Circuit Court of Livingston County, Illinois on July 18, 1989, Easley was convicted of the first-degree murder of Robert Taylor, a superintendent at the Pontiac Correctional Center. At the time, Easley was incarcerated at Pontiac for an unrelated murder conviction. At a separate sentencing hearing, the same jury found Easley eligible for the death

41

penalty on the ground that Easley's victim was a correctional officer, which is a statutory aggravating circumstance. The jury concluded that there were no mitigating factors sufficient to preclude imposition of the death penalty, and the trial judge therefore sentenced Easley to death.

Easley filed a direct appeal with the Illinois Supreme Court, which affirmed Easley's conviction and sentence on April 16, 1992. *People v. Easley,* 148 Ill.2d 281 (1992)(*Easley I*). Easley then filed a post-conviction petition with the Livingston County Circuit Court. On August 17, 1997, the Livingston County Circuit Court granted the State's motion to dismiss Easley's post-conviction petition. The Illinois Supreme Court affirmed the Circuit Court's dismissal of Easley's post-conviction petition on May 25, 2000. *People v. Easley,* 192 Ill.2d 307 (2000)(*Easley II*). On May 28, 2003, Easley filed his second amended petition for writ of habeas corpus with this court.

## B. Trial Testimony

The following recitation of facts is drawn from the Illinois Supreme Court's ruling on Easley's direct and post-conviction appeals, which facts Easley does not challenge. 28 U.S.C. § 2254(e)(1); *Mahaffey v. Schomig,* 294 F.3d 907, 915 (7th Cir. 2002) (unless a habeas petitioner provides clear and convincing evidence to the contrary, a determination of a factual issue by a state court is presumed correct for the purposes of habeas review).

Superintendent Taylor was killed in his office at Pontiac on the morning of September 3, 1987. A "shank," or homemade knife, was recovered from the office and identified as the weapon used to murder Taylor. At trial, inmate Lawrence Spillar testified to the following events. Sometime before 11:00 a.m. on September 3, 1987, he and inmate Charles Nealy were seated in Taylor's office and Taylor was seated behind his desk, facing the two inmates. As the

2

three men spoke, Easley ran into the office, jumped on Taylor's desk and struck him in the face. Easley then pulled a knife from his belt and stabbed Taylor. Spillar then ran from Taylor's office and collided with another inmate, Roosevelt Lucas, who was entering Taylor's office. As he left, Spillar saw Lucas hitting Taylor with a metal pipe. Spiller then watched Easley run down the gallery and discard his gloves, coat and hat.

Inmate Demetre Brown testified that shortly before 11:00 a.m. on September 3, 1987, he saw Easley sitting on a radiator located near Taylor's office. According to Brown, Easley was putting on a cap and gloves and was wearing a winter coat and white gym shoes. Brown then saw Easley run into Taylor's office and stab Taylor.

Correctional Lieutenant Shettleworth testified that he had seen Easley near Taylor's office shortly before Taylor was attacked and that Easley was wearing a heavy coat. Correctional Officer Don Lyons and Correctional Captain Donald Whitaker corroborated this testimony. Following the attack, Correctional Officer Walter Turner testified that he saw Easley alone in his cell wearing a white t-shirt and white tennis shoes.

In addition to this testimony, State witnesses also presented physical evidence linking Easley to the murder. Crime evidence technician Edward Kallel collected a metal pipe, a shank, gloves, a sheet of computer paper marked with a shoe print, and blood samples from the murder scene. Steven Kasarsky, a fingerprint examiner, testified that he found a print on the shank's handle that matched Easley's fingerprint. Michael Krieser of the Illinois State Police examined the computer paper and testified that the shoeprint left on the paper was made with the left shoe of a pair of gym shoes removed from Easley's cell. Richard Ores, the Pontiac evidence

3

custodian, testified that he removed clothing and tennis shoes from Easley's cell. According to Ores, the clothes and shoes were damp, as if they had recently been washed or soaked.

At trial, the State's theory of the case was that Easley was a member of a street gang called the Black Gangster Disciples, which operated inside the Pontiac. The gang blamed a Pontiac correctional officer for killing another gang member, Billy Jones (a.k.a. "Zodiac"), who had died in the jail earlier that year. The State sought to establish that the Black Gangster Disciples conspired to kill Taylor to avenge Jones' death and that Easley was selected to carry out this conspiracy.

Although Easley did not testify at trial, one of his post-arrest statements was allowed into evidence. After the murder, Easley was handcuffed and removed from his cell and taken to the assistant warden's office where he was met by investigators Read and Brubaker. Brubaker advised Easley of his *Miranda* rights and Read recorded that Easley refused to answer any questions and refused to waive his right to remain silent. Read testified that neither he nor Brubaker asked Easley any further questions after receiving his response to the *Miranda* warnings. Another investigator, Deputy Director Gerald Long, then entered the room and was advised by the officers that they had administered the *Miranda* warnings and that Easley refused to answer any questions about the Taylor murder. Long testified that he then told Easley that he understood that Easley had refused to answer any questions but they had inmate testimony that indicated that he and another individual were perpetrators of Taylor's murder and that if convicted of the crime, he could be subject to the death penalty. At that point, Long testified that Easley said to him, "all you honkey motherfuckers want is a nigger donkey to pin this case on,

4

and I am your donkey, I am your killer." After making this statement, Easley was returned to his cell. Over Easley's motion to suppress, the statement to Long was admitted into evidence.

## II. MOOT SENTENCING CLAIMS

On January 11, 2003, former Illinois Governor George Ryan commuted Easley's death sentence to natural life in prison without the possibility of parole. Since Easley's commutation, the Illinois Supreme Court has issued decisions on direct appeal and modified decisions on the denial of rehearing in other capital cases. In each case, the Illinois Supreme Court concluded that former Governor Ryan's commutation of the defendant's death sentence rendered moot any capital sentencing claims. *See, e.g., People v. Ceja*, 204 Ill.2d 332 (2003)(commutation removes judicially imposed sentence replacing it with a lesser, executively imposed sentence); *People v. Lucas*, 203 Ill.2d 410 (2003)(same); *People v. Miller*, 203 Ill.2d 433 (2003)(same). The Seventh Circuit has similarly decided the issue. *See, e.g., Wilson v. Mote*, No. 03-1943, slip. op. at 1 (7th Cir. June 18, 2003)(commutation mooted prisoner's habeas claims based on his death sentence).

Although Easley amended his habeas petition since the commutation of his death sentence, he nevertheless includes seven claims challenging his death sentence in his last amended petition. Contrary to Easley's contentions that these claims are valid, this court concludes that any claims challenging his death sentence are now moot. These claims include: (1) ineffective assistance of counsel at the capital sentencing hearing; (2) ineffective assistance of appellate counsel for not raising on direct review all sentencing-related claims raised by post-conviction counsel; (3) prosecutorial misconduct at sentencing hearing; (4) improper first-stage eligibility instructions; (5) improper and highly prejudicial evidence admitted at sentencing

hearing; (6) jury heard improper victim impact evidence; and (7) a "death row phenomenon" claim.[1]

## III. HABEAS STANDARDS

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petitioner is not entitled to a writ of habeas corpus unless the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1); *see also Williams v. Taylor,* 529 U.S. 362, 404-05 (2000). A state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by the Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Id.* at 404. To demonstrate an "unreasonable application" of clearly established federal law, a habeas petitioner must establish that the state court unreasonably applied the controlling legal rule to the facts of the case. *Id. at* 407. Moreover, the state court's unreasonable application of Supreme Court precedent must be more than incorrect or erroneous. Rather, it must be "objectively" unreasonable. *Lockyer v. Andrade,* 123 S.Ct. 1166, 1174 (2003); *Hardaway v. Young,* 302 F.3d 757, 762 (7th Cir. 2002)(state court decision must lie "well outside the boundaries of permissible differences of opinion."); *see also Rice v. McCann,* 339

---

[1] Easley also calls the court's attention to a lawsuit filed by the State's Attorney of Livingston County, *People ex rel. Brown v. Easley (and others)*, No. 03-MR16, in the Circuit Court of Livingston County, which challenges the former governor's ability to commute Easley's death sentence. This challenge has been mooted by the Illinois Supreme Court's recent decision in *People ex. rel. Lisa Madigan v. Snyder,* No. 95663, 2004 WL 116116 (Jan. 23. 2004)(broadly rejecting Illinois Attorney General's challenges to commutations). Accordingly, Easley concerns regarding this lawsuit are unwarranted.

F.3d 546, 548 (7th Cir. 2003)(reasonable state court application of federal law is at least minimally consistent with facts and circumstances of case).

## IV. PROCEDURALLY DEFAULTED CLAIMS

Before a federal court will consider a habeas corpus petition, a petitioner must satisfy several procedural requirements. First, a petitioner must exhaust state remedies – this is, the petitioner must give the state's highest court an opportunity to address each claim. *O'Sullivan v. Boerckel,* 526 U.S. 838, 839 (1999). To satisfy this requirement, a petitioner must fairly present to the state judiciary both the operative facts and legal principles that control each claim. *Wilson v. Briley,* 243 F.3d 325, 327 (7th Cir. 2001).

Second, the petitioner must comply with state procedural rules to avoid procedurally defaulting his claims. Accordingly, a habeas claim may be procedurally defaulted if the state court rests its judgment on an independent and adequate finding of procedural default under state law. *See Stewart v. Smith,* 536 U.S. 856, 860 (2002); *see also Wright v. Walls,* 288 F.3d 937, 947 (7th Cir. 2002) (waiver is an independent and adequate state procedural ground in Illinois). Moreover, failure to appeal the dismissal of a post-conviction petition in Illinois state court will be treated as an independent and adequate state ground (as if a state court had actually found the claims procedurally barred) preempting further habeas review in federal court. *Boerckel,* 526 U.S. at 839. A federal court, however, may excuse a procedural default if a petitioner can show either cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). With these standards in mind, the court will address Easley's claims.

7

## A. *Brady* Claim

Easley contends that he was denied his constitutional rights to due process, equal protection, and other unidentified constitutional rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution because the prosecution failed to disclose certain material evidence pursuant to *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Specifically, Easley claims that the prosecution failed to tender a substantial amount of impeaching information with regard to inmate witnesses Demetre Brown, Larry Spillar, and Harry Martin. Easley also claims that the prosecution withheld the results of polygraph tests performed on inmate witnesses, which may have contained *Brady* material.

Easley did not bring these *Brady* claims on direct appeal. Rather, Easley first raised a slightly less developed version of these claims on post-conviction review.[2] When relief was denied by the post-conviction court, Easley did not include a *Brady* claim in his appeal petition to the Illinois Supreme Court. This voluntary omission deprived the highest state court of an opportunity to act on his *Brady* claims, thereby procedurally defaulting them. *Boerckel,* 526 U.S. at 845; *White v. Godinez*, 192 F.3d 607, 608 (7th Cir. 1999) (failure to pursue a discretionary post-conviction appeal to the highest court of the state constitutes a procedural default that bars resort to federal habeas corpus relief).

As "cause" to excuse his procedural default, Easley argues that he did not present *Brady* claims on appeal because the critical evidence underlying the claims was precluded from

---

[2]In his post-conviction brief, Easley argued that the state failed to provide defense counsel with complete information regarding agreements reached with State witnesses in return for testifying against Easley. Regarding the polygraph results, Easley claims that he made a request during post-conviction proceedings for polygraph records of inmate witnesses, but the records were never tendered.

discovery by the State's misconduct, and cites *Crivens v. Roth*, 172 F.3d 991 (7th Cir. 1999), for support. In *Crivens*, the Seventh Circuit found that while Crivens did not raise a *Brady* claim before the state courts, his failure resulted not from his own lack of attention or other fault, but rather because the State did not provide the evidence establishing the *Brady* claim until after Crivens filed his habeas petition. *Id.* at 995, *citing Strickler v. Greene*, 527 U.S. 263, 282 (1999)(cause exists where "some objective factor external to the defense impeded counsel's effort to comply with the State's procedural rules."). Easley's reliance on *Crivens* is misplaced. While it is sometimes true that the discovery of newly discovered evidence on which to base a constitutional claim can constitute cause to excuse a procedural default, *see Reed v. Ross*, 468 U.S. 1, 14 (1984), this principle finds no application here because the record fails to reveal that Easley has indeed discovered any new evidence that was not previously available to him.

Regarding the inmate trial witnesses, Easley does not identify any new "impeaching information" that he discovered regarding trial witnesses Brown and Spiller. Instead, he only speculates that the State may have offered them leniency in exchange for their testimony. Easley's unsubstantiated speculation does not constitute newly discovered evidence on which to base a constitutional claim. Moreover, there is nothing "new" about Easley's speculation. The record reveals that the prosecution assured Easley's post-conviction counsel that Brown and Spiller were not given any special deals for their testimony. If Easley's post-conviction counsel had reason to doubt the veracity of prosecution's assurances, he could have, and should have, raised the issue on appeal to the Illinois Supreme Court.

Easley's claim regarding inmate witness Harry Martin is similarly without merit. Unlike witnesses Brown and Spiller, it appears Easley has in fact discovered some undisclosed

9

information that might have damaged Martin's credibility had he testified. Easley claims that by "chance and coincidence" he learned that Martin had received a reduction in his sentence and financial compensation for cooperating with the State against him. Easley dates these chance discoveries to the years between 1992 and 1994. While under some circumstances, this type of undisclosed information may provide adequate grounds for a *Brady* claim, *see Giglio v. United States*, 405 U.S. 150, 154-55 (1972), the court need not reach this difficult question here because Easley did not file his post-conviction appeal until 1998, four years after Easley allegedly discovered possible impeaching information about inmate witness Martin. Thus, Easley's own admission demonstrates that he knew of the alleged *Brady* material well before filing his post-conviction appeal. The only reasonable explanation for the claim's omission in his brief to the Illinois Supreme Court is that it was the result of the conscious choice of Easley's post-conviction appellate counsel not to raise the claims on appeal.

Regarding the inmate polygraph test results, the record also reveals that Easley's post-conviction counsel was well aware of the tests' existence. In fact, he made a specific request to view them. Again, Easley does not offer any explanation why his post-conviction counsel did not raise the issue on appeal to the Illinois Supreme Court. Moreover, Easley does not offer any facts to demonstrate that the polygraph tests contain *Brady* material. In fact, he only speculates that the test results "may contain Brady material that could have been used by the petitioner at trial." And as discussed above, Easley's mere speculation cannot serve as a basis for a *Brady* claim. *See Strickler,* 527 U.S. at 286. Accordingly, for the reasons discussed above, this court

finds that Easley has not demonstrated sufficient "cause" to excuse the procedural default of his *Brady* claims.[3] This court is therefore barred from collaterally reviewing Easley's *Brady* claims.

Finally, imbedded within Easley's *Brady* claim, he appears to make a discovery request of this court. Easley would like the court to rule on a July 8, 2002 motion, requesting the State produce the polygraph test results. Discovery in a habeas proceeding is available only "if, and to the extend that, the judge in the exercise of his [or her] discretion and for good cause shown grants leave to do so, but not otherwise." Rule 6(a) of the Rules Governing Habeas Corpus Cases Under § 2254. Good cause exists "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy v. Gramley,* 520 U.S. 899, 908-09 (1997). Here, Easley has not provided the court with any specific allegations regarding the polygraph tests. Other than Easley's mere speculation, the court has no facts before it on which to believe Easley would be able to demonstrate he is entitled to relief if his present discovery request were granted. As such, the court finds that Easley has not established the requisite good cause, and therefore denies Easley's pending motion for discovery.

### B. Testimony on Easley's Right to Remain Silent

Next, Easley claims that he was denied his constitutional rights to due process, equal protection, and other unidentified constitutional rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution when the State elicited testimony from Deputy Director Long on direct examination that, rather than talk to investigators, Easley had

---

[3]The court need not reach the "prejudice" prong of the cause-and-prejudice exception because Easley has not made the requisite showing of cause to for his procedural default. *Farrell v. Lane*, 939 F.2d 409, 412 (7th Cir. 1991).

invoked his right to remain silent. Easley first raised this claim on direct appeal. The Illinois

Supreme Court concluded that because Easley did not object to Long's testimony at trial or

include the objection in his post-trial motion, his claim was waived. This holding constitutes an

independent and adequate state ground, s*ee Rodriguez v. McAdory*, 318 F.3d 733, 735 (7th Cir.

2003), which precludes this court from performing further collateral review. *See Stewart*, 536

U.S. at 860.

Easley presents a number of undeveloped arguments to overcome this procedural default.

Easley first notes that in addition to finding his claim waived, the Illinois Supreme Court also

concluded that the admission of Long's testimony did not constitute plain error. Easley argues

that in reaching this latter conclusion the Illinois court engaged in a substantive review of his

claim, thus opening the door for this court to perform its own substantive review. Easley is

incorrect for two reasons. The Illinois Supreme Court's discussion of plain error was not a

substantive review, but was rather an analysis of whether the claim, despite its obvious

procedural deficiency, warranted an adjudication on the merits under the state rule of plain error.

Because Easley did not meet the requirements of the Illinois plain error rule, the court had no

occasion to review the merits of Easley's claim. *See Lee v. Davis*, 328 F.3d 896, 900 (7th Cir.

2003) (a state court's fundamental error review of a defaulted claim does not undermine the

state's adequate and independent procedural ruling). Additionally, the Illinois Supreme Court's

determination that "plain error" did not occur is, in itself, an independent and adequate state law

ground which precludes federal review. *Willis v. Aiken*, 8 F.3d 556, 566 (7th Cir. 1993). Thus,

Easley's first argument fails.

Easley also asserts "cause" to excuse his procedural default in state court. Easley claims that his trial counsel was constitutionally ineffective for failing to object at trial or present his claim in a post-trial motion. While the ineffective assistance of counsel can constitute "cause" to excuse a procedural default, *see Freeman v. Lane,* 962 F.2d 1252, 1257 (7th Cir. 1992), Easley does not set forth any specific arguments or factual substantiation to support this ineffective assistance claim.

In a final attempt to resuscitate his procedurally defaulted claim, Easley asserts that the admission of Long's testimony constituted a structural defect in the trial mechanism. *Brecht v. Abrahamson,* 507 U.S. 619 (1993)(structural defects require automatic reversal because they infect the entire trial process). Easley claims that this error was so egregious, that he did not have to object at trial or raise the issue on appeal to preserve the claim. Easley's argument is without merit. While a structural error may affect a court's cause and prejudice calculus, it does not alter the threshold requirement that habeas petitioners who bring constitutional claims to the federal courts after a state procedural default must demonstrate cause and actual prejudice before obtaining relief. *See Engle v. Isaac,* 456 U.S. 107, 129 (1982). Only in certain limited circumstances will a petitioner's procedural default be excused without showing cause and actual prejudice. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000) (only exception to cause and prejudice rule is fundamental miscarriage of justice). As explained by the United States Supreme Court in *Murray v. Carrier,*

> In an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.

13

477 U.S. 478, 495-96 (1986); *see also Britz v. Cowan,* 192 F.3d 1101, 1103 (7th Cir. 1999)("Waiver will be forgiven . . . if the petitioner can show that he was 'actually' and not merely 'legally' innocent of the criminal charges against him."). Because Easley makes no argument of actual innocence here, the fundamental miscarriage of justice exception cannot rescue his claim. Accordingly, the court finds that Easley has failed to overcome his procedural default and is therefore precluded from reviewing his claim.

### C.    Jury Instruction Challenge

Easley contends that he was denied his constitutional rights to due process, equal protection, and other unidentified constitutional rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution because the jury instructions given for the first degree murder count misstated the State's burden of proof. Easley did not object to the instructions at the time they were given, nor did he raise the issue in his post-trial motion. Accordingly, the Illinois Supreme Court concluded that the claim was waived. *Easley I,* 148 Ill.2d at 337.[4] This finding is an independent and adequate state ground precluding this court's consideration of his claim on collateral review. *Stewart,* 536 U.S. at 860; *Wright,* 288 F.3d at 947. Because Easley offers no explanation for his procedural default, this court is barred from collaterally reviewing the claim. *See Coleman,* 501 U.S. at 750.

---

[4]The Illinois Supreme Court also concluded that the improper jury instructions did not rise to the level of plain error because the instructions, as tendered, did not prejudice Easley. *See Easley I,* 148 Ill.2d at 337-39. This holding constitutes an additional independent and adequate state law ground that precludes federal review. *See Willis,* 8 F.3d at 566.

**D. Prosecutorial Misconduct**

Next, Easley claims he was denied his constitutional rights to due process, equal protection, and other unidentified constitutional rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution because of the prosecutor's misconduct at trial. Easley advances two specific instances of prosecutorial misconduct: (1) that the State presented improper victim impact evidence; and (2) that the State improperly introduced and argued gang-related evidence.

### 1. Victim Impact Evidence

On direct examination, the State elicited testimony from Taylor's widow regarding her four surviving children. Then, during closing arguments, the prosecutor rehashed the widow's testimony. Easley claims that the State's improper line of questioning and comments during closing impermissibly diverted the jury's attention away from the relevant question of Easley's guilt. Easley raised these claims on direct appeal, but he did not do so in the context of a constitutional claim of prosecutorial misconduct. Only in his petition to this court does Easley change the basis of his claim from a state law evidentiary claim to a constitutional challenge. Thus, the court finds that Easley did not fully and fairly present his first claim of prosecutorial misconduct to the Illinois Supreme Court. *Momient-El v. Detella*, 118 F.3d 535, 539-40; *Rodriguez v. Scillia*, 193 F.3d 913, 916 (7th Cir. 1999). As a result, the claim is procedurally defaulted. *Boerckel*, 526 U.S. at 845.

In determining whether an issue has been fairly presented to a state court, the court looks to whether the petitioner's argument to the state court: "(1) relied on pertinent federal cases; (2) relied on state cases applying constitutional analysis to a similar factual situation; (3) asserted the

15

claim in terms so particular as to call to mind a specific constitutional right; or (4) alleged a pattern of facts that is well within the mainstream of constitutional litigation." *Momient-El v. DeTella,* 118 F.3d at 538-39. Moreover, for a constitutional claim to be fairly presented to a state court, both the operative facts and the "controlling legal principles" must be submitted to the court. *Rodriguez,* 193 F.3d at 916. It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state claim was made. Instead, the legal basis upon which a petitioner seeks relief must be fairly presented to the court. *See Momient-El,* 118 F.3d at 539.

A review of Easley's state court brief reveals that Easley did not cite any pertinent federal cases or state cases applying constitutional analysis, nor did he assert the claim in constitutional terms or allege facts within the mainstream of constitutional litigation. *See Rodriguez,* 193 F.3d at 918. Moreover, this is not a case in which a Easley has presented a "mere variation [] in the same claim." *Wilks v. Israel,* 627 F.2d 32, 38 (7th Cir. 1980). Rather, it is clear that in state court Easley raised an entirely different issue of state evidentiary law. Because the Illinois Supreme Court was presented only with state law, it necessarily follows that its decision regarding the victim impact evidence was based entirely on state law. *See Easley I,* 148 Ill.2d at 335. While it is true that Easley's state court brief passingly cites to the due process clause, it is also true that errors cannot be federalized simply by citing to the due process clause. *See Lieberman v. Budz,* 2002 WL 1888396 at *7 (N.D.Ill. Aug. 16, 2002); *see also Langford v. Day,* 110 F3d 1380, 1389 (9th Cir. 1996)(petitioner cannot transform a state-law issue into a federal

one merely by asserting a violation of due process). Accordingly, the court finds that Easley did not fully and fairly present his claim to the Illinois Supreme Court.[5]

To excuse this procedural default, Easley argues that his appellate and post-conviction counsel were ineffective for not raising the appropriate constitutional claims. However, like many of Easley's arguments, this excuse is completely undeveloped and without factual support. Moreover, to the extent that Easley blames his post-conviction counsel for any omission, such a claim is not cognizable in these proceedings. *See* 28 U.S.C. 2254(i); *see also Steward v. Gilmore,* 80 F.3d 1205, 1212 (7th Cir. 1996) (ineffective assistance of post-conviction counsel is not itself a cognizable federal constitutional violation and may not serve as cause for a procedural default). Because Easley has not demonstrated cause and prejudice or that a fundamental miscarriage of justice will occur if this court does not address this claim, Easley has not overcome procedural default. Consequently, this court is barred from collaterally reviewing his claim.

### 2. Gang Related Evidence and Argument During Opening Statement, Trial, and Closing Argument

Easley claims that the prosecution introduced improper gang-related evidence during opening statements through their witnesses and at closing. Easley now claims that the State's extensive use of gang-related evidence throughout trial constituted prosecutorial misconduct because the State's evidence fell short of proving a conspiracy or that Easley was part of any

---

[5]Also, regarding the State's improper comments during closing argument, the Illinois Supreme Court found this claim waived because Easley did not object at trial nor did he raise the issue in his post-trial motion. Easley I, 148 Ill.2d at 346. The court's conclusion is an independent and adequate state ground that provides an additional reason why this court cannot review Easley's claim. *Stewart,* 536 U.S. at 860; *Wright,* 288 F.3d at 947.

conspiracy. While Easley raised this claim on direct appeal to the Illinois Supreme Court, he did not do so in the context of a constitutional claim of prosecutorial misconduct. As with his other prosecutorial misconduct claim discussed directly above, Easley has only now changed the basis of his claim from a state law evidentiary claim to a constitutional challenge. The court therefore finds that Easley did not fully and fairly present his first claim of prosecutorial misconduct to the Illinois Supreme Court. As a result, the claim is procedurally defaulted.

Easley's direct appeal brief to the Illinois Supreme Court argues that the State's statements during opening and closing were irrelevant, prejudicial, and not based on the evidence because the State failed to prove that Taylor's murder was the result of a gang conspiracy. To support his position, Easley cites only state law cases, which themselves relied on state law decisions to reach their conclusions. In addition, Easley's never sufficiently explained how the State's actions violated his constitutional rights. Instead, Easley only challenged the various "evidentiary errors" and concluded that such errors denied him a fair trial under the Illinois Constitution's Due Process Clause. Only in the final line of his claim, and without any supporting argument, Easley argued "the evidentiary errors, in rendering Mr. Easley's trial fundamentally unfair, also violated his right to due process under the Fourteenth Amendment of the United States Constitution." But, as discussed above, errors cannot be federalized simply by citing to the due process clause. *See Langford,* 110 F.3d at 1389.

Because Easley never presented the Illinois Supreme Court with a federal constitutional claim, it is not surprising that the Illinois court relied on state law to reach the conclusion that the impact of the gang-related evidence on Easley's trial was ultimately without consequence and did not deny Easley a fair trial. *See Easley I,* 148 Ill.2d at 330. The court never discussed

18

prosecutorial misconduct, but rather framed the issue as a state law evidentiary question because that is precisely how Easley presented his argument. Also, to the extent that Easley managed to present a prosecutorial misconduct claim with respect to the closing argument, the Illinois Supreme Court found any such claim waived because Easley never objected at trial or in a post-trial motion. *Id.* at 345-46. This finding constitutes an independent and adequate state court ground which precludes this court's further review. *See Stewart,* 536 U.S. at 860; *Wright,* 288 F.3d at 947. Accordingly, the court finds that Easley did not fully and fairly present his prosecutorial misconduct claim to the Illinois Supreme Court. Because Easley offers no explanation for his failure to present a federal constitutional claim in state court, this court cannot consider this claim on collateral review. *See Coleman,* 501 U.S. at 750. The court now turns to the merits of Easley's remaining habeas claims.

## V.    ADDITIONAL HABEAS CLAIMS

### A.    Admission of Statement

Easley claims that he was denied his constitutional rights to due process, equal protection, and other unidentified constitutional rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution when the court admitted a statement improperly evoked after Easley exercised his right to remain silent. After Taylor's murder, Easley was handcuffed, taken into a room, and read the *Miranda* warnings by two prison investigators. Easley refused to answer any questions and refused to waive his right to remain silent. As a result, the investigators did not ask Easley any further questions. Shortly thereafter, Deputy Director Long entered the room and was advised by the two investigators that Easley was given the *Miranda* warnings and refused to answer any questions. Long testified that he then informed

19

Easley that he had inmate testimony implicating Easley in Taylor's murder, a crime that could subject him to the death penalty. At this point, Easley blurted out "all you honkey motherfuckers want is a nigger to pin this case on, and I'm your donkey, I'm your killer." Before trial, Easley filed a motion to suppress this statement. The trial court denied Easley's motion and allowed the statement into evidence. Easley directly appealed the trial court's decision to the Illinois Supreme Court. The court performed a thorough substantive review of Easley's claim, detailing relevant facts and applying applicable United States Supreme Court precedent, and found that Easley's statement was voluntarily made and was therefore admissible at trial. Easley now claims that the Illinois Supreme Court's decision involved an unreasonable application of clearly established United States Supreme Court law. This court disagrees.

To reach its decision, the Illinois Supreme Court relied on *Mosley*, 432 U.S. at 104, for the proposition that "the admissibility of statements after the person in custody had decided to remain silent depends under *Miranda* on whether his right to cut off questioning was 'scrupulously honored.'" *Easley I*, 148 Ill.2d at 303-04. By analogizing to other state court decisions, the court determined that Long's statement was made in "an obvious effort to persuade [Easley] to make a statement." *Id.* at 305. But, the court noted that *Mosley* instructs courts not to only look at the interrogator's statement in determining whether the defendant's right to remain silent was scrupulously honored. Rather, the court also needed to look at the "circumstances surrounding [Easley's] statement." *Id.* The court found it significant that investigators who initially administered the warning immediately stopped questioning Easley when he invoked his right to remain silent and also that Easley's statement was made to a different officer from the one who had given Easley the *Miranda* warnings. *See id.* The court further noted that Long did

not explicitly question Easley about the murder and that Long's statement, while improper, did not rise to the "functional equivalent" of interrogation. *Id.* at 306 *citing Rhode Island v. Innis*, 446 U.S. 291 (1980). These surrounding circumstances permitted the court to conclude that Easley's right to remain silent was scrupulously honored and that Easley's statement was voluntarily made. *See Easley I*, 148 Ill 2d. at 306.

This court finds that although the Illinois Supreme Court's decision on this issue may have been incorrect, it was not objectively unreasonable. *See Lockyer, 123 S.Ct. 1166, 1174 (2003); see also Hardaway*, 302 F.3d at 762. As in *Mosley*, the investigators' questions immediately ceased after the suspect invoked his right to remain silent. Moreover, the record does not reveal that Easley was subjected to a prolonged interrogation or was the subject of any overtly coercive police behavior. This court might not have reached the conclusion drawn by Illinois Supreme Court that Long's statement did not rise to the "functional equivalent of interrogation" as those terms are defined in *Innis*. The *Innis* Court defined interrogation as "any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response." *Innis*, 446 U.S. at 300-01. Here, Long informed Easley that he was the primary suspect in a murder that could subject him to the death penalty. When viewed from Easley's perspective, Long's statement appears likely to elicit some sort of response, incriminating or otherwise.

But, while this court may disagree with the Illinois Supreme Court's application of *Innis* to the facts of this case, the court cannot conclude that the Illinois Supreme Court's ultimate decision was objectively unreasonable. *Lockyer*, 123 S.Ct. at 1175 ("[u]nder Section 2254(d)(1)'s "unreasonable application" clause, a federal habeas court may not issue the writ

21

simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."). Considering the aforementioned circumstances surrounding Long's comments and Easley's statement, this court finds that the Illinois Supreme Court's decision was at least minimally consistent with the facts and circumstance of the case, and thus, denies Easley's claim. *Rice*, 339 F.3d at 548 (reasonable state court application of federal law is at least minimally consistent with facts and circumstance of case).

Moreover, if it was error to allow the statement into evidence, such error was harmless under *Brecht* because Easley has not demonstrated that admission of the statement "had [a] substantial or injurious effect or influence in determining a jury's verdict." *Brecht*, 113 S.Ct. at 1722; *see also Aleman v. Sternes*, 320 F.3d 687, 690-91 (7th Cir. 2003) (after AEDPA, *Brecht* remains good law and should be applied for harmless error inquires in habeas corpus cases). There was an abundance of other evidence from which the jury could base its verdict. In fact, the Illinois Supreme Court properly characterized the evidence against Easley as "overwhelming." *Easley I*, 148 Ill.2d at 376. In addition, it is not at all clear that Easley's statement was, in fact, an admission of guilt. When presented in its context, the statement seems much more akin to an expression of exasperation than a confession. Thus, even if it was erroneous for the trial court to allow the introduction of Easley's statement, the additional and independent evidence of Easley's guilt dispels the notion that such error had a substantial or injurious effect or influence in determining the jury's verdict.

## B.    Sixth Amendment Claim

Easley claims that he was denied his Sixth Amendment right to confront witnesses when the State presented hearsay testimony to establish that Easley murdered Taylor to further a gang conspiracy. Specifically, Easley challenges the testimony of the one of the State's witnesses, Correctional Officer Jarrett, who described that he heard inmates threatening to retaliate against prison staff for killing a fellow gang-member. During closing arguments, the State reinforced Jarrett's testimony to develop the motive behind Easley's actions. Easley also challenges Deputy Director Long's testimony that a post-murder investigation revealed that the Black Gangster Disciples were involved in Taylor's murder and that Easley was a member of that gang. Easley argues that this testimony consisted mainly of hearsay, was presented for the truth of the matter asserted, and had an extremely prejudicial effect on the jury. Easley's then cites to a number of United States Supreme Court cases generally discussing the Sixth Amendment and concludes that his constitutional rights were violated.

Easley first presented this claim on direct appeal to the Illinois Supreme Court, but not as a constitutional claim. As noted previously, Easley relied entirely on state law cases discussing state evidentiary law. Easley did not cite a single federal case nor did he assert the claim in constitutional terms. Only in the final line of his argument did Easley refer to the Sixth Amendment of the United States Constitution. Easley did not, however, accompany this passing reference with any argument or reasoning. Consequently, the Illinois Supreme Court relied entirely on state law to deny Easley's claim. *Easley I*, 148 Ill.2d at 324. Therefore, this court cannot rule on Easley's alleged Sixth Amendment claim because he did not give the state court a full and fair opportunity to address the issue. *See Boerckel*, 526 U.S. at 844-45. Further,

petitioner does not allege cause or prejudice for this procedural default, nor does he make a showing of actual innocence. Thus, this court is barred from reviewing his claim. *See Coleman,* 501 U.S. at 750.

Even if Easley managed to present a federal constitutional claim to the state court, his claim is nevertheless without merit. While the record demonstrates that the State's theory of the case was constructed using some hearsay evidence, the prejudicial effect of this evidence was ultimately insignificant. It is well-established that a violation of the Sixth Amendment's Confrontation Clause may be deemed harmless error if there is overwhelming evidence of the defendant's guilt. *Harrington v. California,* 395 U.S. 250, 253 (1969); *Denny v. Gudmanson,* 252 F.3d 896, 904 (7th Cir. 2001). Here, two inmate witnesses testified that they saw Easley stab Taylor. Three correctional officers corroborated the inmate's testimony by identifying Easley's clothing before and after the murder. In addition, the State presented substantial physical evidence directly linking Easley to the murder, including fingerprints on the murder weapon. Due the strong and plentiful evidence against Easley, the improperly admitted hearsay testimony was unnecessary to establish Easley's guilt, and any error in allowing its admission was harmless. *See Delaware v. Van Arsdall,* 475 U.S. 673, 684 (1986)(overall strength of prosecution's case an important factor in determining whether Confrontation Clause error is harmless).

## C.    Ineffective Assistance of Counsel

Easley claims that both his trial and appellate counsel were constitutionally ineffective. To prevail on a claim of ineffective assistance of counsel, Easley must establish both the performance and prejudice prongs under *Strickland v. Washington,* 466 U.S. 668 (1984). Under

24

the first prong of the *Strickland* standard, Easley must show that his counsel's representation fell below an objective standard of reasonableness. *Id.* at 687-88. Under the *Strickland* prejudice prong, Easley must demonstrate that it is reasonably likely that, but for his counsel's errors, the decision reached would have been different. *Id.* at 696. Because the *Strickland* inquiry is a balancing test rather than a bright-line rule, only clear error in applying *Strickland* can support a writ of habeas corpus. *See Holman v. Gilmore*, 126 F.3d 876, 882 (7th Cir. 1997).

### 1.    Ineffective Assistance of Trial Counsel

#### a.    Failure to Object to Venue

First, Easley contends that trial counsel should have objected to the trial's venue in a more timely fashion, rather than right before the trial began when preparations were already in place. Accordingly, Easley argues that his trial counsel was constitutionally ineffective by failing to timely object to the selected venue. Easley did not raise this claim on direct appeal, but raised it for the first time in his petition for post-conviction relief, but then abandoned it on appeal. The Illinois post-conviction court found that the claim was waived because Easley could have presented the claim to the Illinois Supreme Court on direct review, but failed to do so. Because waiver is an independent and adequate state court ground, *see Wright*, 288 F.3d at 947, this claim is procedurally defaulted. *See Stewart*, 536 U.S. at 860. Moreover, Easley did not appeal the post-conviction court's dismissal of his claim. Because Easley did not take advantage of the Illinois discretionary review process, this provides a further reason why Easley's claim is procedurally defaulted. *See White*, 192 F.3d at 608.

As cause to excuse this default, Easley claims that direct appellate counsel was ineffective for not raising his trial counsel's ineffectiveness. While an ineffectiveness claim

could serve as cause under some circumstances, *see Freeman,* 962 F.2d at 1257, his appellate counsel's ineffectiveness could not revive his claim here, because it is itself procedurally defaulted. Easley does not offer any explanation why he did not raise his appellate counsel's ineffectiveness with regard to the venue claim to the Illinois Supreme Court on post-conviction review. It is thus procedurally defaulted under *Boerckel,* 526 U.S. at 844-45, and cannot serve as cause to excuse his procedural default. *See Edwards,* 529 U.S. 446, 452-53 (ineffective assistance of appellate counsel claim cannot serve as cause for a default if it is procedurally defaulted itself).

### b. Failure to Request a Second Attorney

Easley next claims that his trial counsel was ineffective for not requesting that a second attorney assist at Easley's trial. Easley raised this claim for the first time in his petition for post-conviction relief. After the Illinois post-conviction court found Easley's claim without merit, Easley did not appeal the decision to the Illinois Supreme Court. Easley's claim is therefore procedurally defaulted. *See Boerckel,* 526 U.S. at 845; *White,* 192 F.3d at 608. Because Easley offers no explanation for this procedural default, this court cannot consider his claim on collateral review. *See Coleman,* 501 U.S. at 750.

### c. Failure to Request a Fitness Hearing

Easley contends that his trial counsel was constitutionally ineffective in failing to request a fitness hearing. Easley raised this claim for the first time in his brief to the Illinois post-conviction court. That court found the claim barred by the doctrine of waiver because Easley's claim could have been presented on direct review in the Illinois Supreme Court. Normally, this finding would constitute an independent and adequate state ground which precludes this court's

review. *Stewart,* 536 U.S. 856; *Wright*, 288 F.3d at 947. However, the Illinois Supreme Court, on post-conviction review, considered Easley's claim on its merits because Easley's claim presented evidence not available to defense counsel on direct appeal. After a thorough review, the Illinois Supreme Court concluded that Easley's claim was without merit. The court explained that an Illinois defendant is entitled to a fitness hearing only when a *bona-fide* doubt of his fitness is raised. *Easley II*, 192 Ill.2d at 318. Thus, to establish that Easley's trial counsel's alleged incompetency prejudiced him within the meaning of *Strickland*, the court reasoned that Easley must first demonstrate that facts existed at the time of trial that would have raised a *bona-fide* doubt regarding Easley's ability to understand the proceedings and assist in his defense. *Id.* at 319.

Accordingly, the court carefully reviewed Easley's evidence, which included Easley's general complaints of headaches and difficulty concentrating, testimony highlighting Easley's irrational statements during trial, evidence that Easley was put on suicide watch after his conviction, and psychiatric examinations procured six years after trial indicating that Easley had long-standing mental problems. *Id.* at 319-23. The court then concluded that Easley's evidence, while demonstrating some mental impairment, failed to raise a *bona fide* doubt of his fitness to stand trial. *Id.* at 323. Accordingly, the court found that Easley was not prejudiced within the meaning of *Strickland* by trial counsel's failure to request a fitness hearing. *Id.*

The Illinois Supreme Court reasonably applied *Strickland* in the context of this claim. *See Eddmonds v. Peters III*, 93 F.3d 1307, 1316-17 (7th Cir. 1996)(inquiry is not whether there should have been a fitness hearing, but whether habeas petitioner was fit to stand trial). If Easley was indeed fit to stand trial, a conclusion reasonably reached by the Illinois Supreme Court, then

27

he certainly was not prejudiced by his counsel's failure to request a fitness hearing. Accordingly, Easley's ineffective assistance of counsel claim based on his counsel's failure to request a fitness hearing is denied.

### d. Trial Counsel's Failure to Object to State's Gang-Related Evidence and Trial Counsel's Introduction of Gang-Related Evidence

Easley claims that his trial counsel was constitutionally ineffective for introducing gang-related evidence as part of his defense and also for failing to object to the State's gang-related evidence. He speculates that the inflammatory nature of the gang-related evidence heavily influenced the jury's verdict. Easley first raised these claims in his petition for post-conviction relief. The post-conviction court explained that the claim was waived because Easley could have presented the claim to the Illinois Supreme Court on direct review, but failed to do so. Because waiver is an independent and adequate state court ground, *see Wright,* 288 F.3d at 947, this claim is procedurally defaulted.[6] *See Stewart,* 536 U.S. at 860. Also, as Easley offers no explanation for this procedural default, this court cannot consider his claims on collateral review. *See Coleman,* 501 U.S. at 750.

### e. Trial Counsel failed to Rebut Evidence by State

Easley explains that the State introduced evidence that Easley's shoe print was on a piece of computer paper that State investigators testified they removed from Taylor's office. Easley claim that his trial counsel was constitutionally ineffective for not contesting the paper's chain of

---

[6]Although it might appear that the post-conviction Illinois Supreme Court reviewed the merits of this particular set of Easley's ineffective assistance claims, a careful reading of that decision reveals that the court reviewed the claims only in the context of an ineffective assistance of *appellate* counsel claim and not ineffective assistance of trial counsel. *See Easley II,* Ill.2d at 328-32. Easley's ineffective assistance of appellate counsel claims are discussed later in this opinion.

custody and also for failing to make the argument that this same type of computer paper could be found all over the prison and that possibly the sheet introduced in evidence was found somewhere else besides Taylor's office. Although Easley raised this claim in his post-conviction petition, he did not advance the argument on appeal to the Illinois Supreme Court. Because Easley did not give the Illinois Supreme Court an opportunity to review the merit of his claim, it is procedurally defaulted. *Boerckel,* 526 U.S. at 844-45. Because Easley offers no explanation for this procedural default, this court cannot consider his claim on collateral review. *See Coleman,* 501 U.S. at 750.

### f. Failure to Object to Testimony and Cross-Examination

Easley claims that he did not receive effective assistance of counsel because trial counsel failed to object to Long's testimony that Easley had invoked his right to remain silent. He also contends that his trial counsel was ineffective because he failed to object to the State's improper cross-examination of two defense witnesses. Easley raised these issues on direct review, but not as ineffective assistance of counsel claims. Instead, Easley raised them as allegations of prosecutorial misconduct. On direct review, the Illinois Supreme Court held that defendant's failure to object at trial, waived review of these issues and that the prosecutor's conduct did not rise to the level of plain error. *Easley I,* 148 Ill.2d at 321-23. Then, on post-conviction review, Easley raised these same issues again, but framed as ineffective assistance of trial counsel claims. The post-conviction Illinois Supreme Court summarily dismissed Easley's claims, reasoning that if the actions complained of did not rise to the level of plain error, the failure of defendant's trial counsel to object thereto could not have prejudiced Easley under *Strickland. See Easley II,* 192 Ill.2d at 332. Put another way, if Easley's underlying claims of prosecutorial misconduct were

29

without merit, as the Illinois Supreme Court concluded, then it necessarily follows that his trial counsel cannot be found constitutionally ineffective for failing to object to the prosecutor's actions. Because Easley fails to make any argument whatsoever as to how the Illinois Supreme Court erred in its application of *Strickland* to his claim, Easley's claims must fail.

### g. No Objection to State's Closing Argument

Easley argues that his trial counsel was ineffective for not objecting to the State's closing argument. Specifically, Easley claims that the State asserted in its closing argument that the Black Gangster Disciples had threatened to kill the correctional staff and made other references to a gang- motivated murder, even though no witness testified to substantiate this evidence. Although Easley raised the issue in his post-conviction petition, he did not raise it on appeal following the trial court's dismissal order; thus, this claim is procedurally defaulted. *Boerckel*, 526 U.S. at 844-45. Because Easley offers no explanation for this procedural default, this court cannot consider his claim on collateral review. *See Coleman*, 501 U.S. at 750.

### h. Cumulative Effect of Counsel's Errors

Easley argues that the cumulative effect of trial counsel's errors violated his right to effective assistance of counsel under *Strickland*. Indeed, a habeas petitioner can establish ineffective assistance of counsel by showing that "the cumulative effect of counsel's individual acts or omissions was substantial enough to meet *Strickland's* test." *Williams v. Washington*, 59 F.3d 673, 682 (7th Cir. 1995). However, because this court concludes that Easley's ineffective assistance of trial counsel claims were either procedurally defaulted or without merit, there are no errors to accumulate. *See Hough v. Anderson*, 272 F.3d 878, 891 n.3 (7th Cir. 2001). The court,

therefore, denies Easley's cumulative effect claim as a basis for his ineffective assistance of trial counsel claim.

## 2.    Ineffective Assistance of Appellate Counsel

Easley claims that his appellate counsel was constitutionally ineffective for "failing to raise all the claims his post-conviction counsel raised." The proper standard for reviewing claims of ineffective assistance of appellate counsel is under *Strickland*. *See Williams,* 529 U.S. at 390-91. Under the first *Strickland* prong, appellate counsel's performance is deficient if counsel fails to appeal any issue that is both obvious and clearly stronger than the issues that were raised. *See Winters v. Miller,* 274 F.3d 1161, 1167 (7th Cir. 2001). To establish prejudice under the second *Strickland* prong, the petitioner must show that appellate counsel's failure to raise an issue might have resulted in the reversal of his conviction or an order for a new trial. *See id.* As with trial counsel, this court must indulge a strong presumption that appellate counsel was constitutionally effective. *See Mason v. Hanks*, 97 F.3d 887, 892 (7th Cir. 1996).

Other than the above-quoted, one line statement, Easley does not make any specific references or legal argument as to what claims appellate counsel failed to bring. Nor does Easley undertake any serious effort to explain how the Illinois Supreme Court's decision as to his ineffective assistance of appellate counsel claims was either an "unreasonable application of" or "contrary to" *Strickland. See Lechner v. Frank,* 341 F.3d 635, 638 (7th Cir. 2003) (habeas petitioner bears burden of showing state court rejected constitutional challenges in manner that was "contrary to" or involved an "unreasonable application of" clearly established Supreme Court law). In fact, Easley does not address *Strickland* at all. Therefore, Easley has not met his

burden in establishing that he was denied effective assistance of appellate counsel, and thus, the court denies his claims.

### C. Cumulative Effect Claim

Easley's last habeas claim is that the cumulative effect of the constitutional violations he alleges in his federal habeas petition deprived him of his constitutional right to a fundamentally fair trial. It is well-established that errors that are harmless standing alone may, when aggregated, amount to the denial of a habeas petitioner's right to due process. *See Alvarez v. Boyd,* 225 F.3d 820, 824 (7th Cir. 2000). To establish a constitutional deprivation based on cumulative errors, Easley must establish that: (1) the court committed at least two errors during trial; and (2) these multiple errors denied him a fundamentally fair trial. *See id.*

First, Easley does not have two trial errors to accumulate because he procedurally defaulted any such errors and the Illinois Supreme Court's decisions were not an unreasonable application of or contrary to clearly established Supreme Court precedent. Second, Easley does not argue how any such errors denied him a fundamentally fair trial. *See id.* at 825 ("but for the errors, the outcome of the trial probably would have been different"). Easley merely concludes that "multitude of egregious Constitutional errors cumulatively prejudiced the Petitioner." Because Easley's conclusory allegation is without adequate factual support, he has not made the requisite showing to establish a cumulative effect claim.

### D. Request For An Evidentiary Hearing

Finally, Easley requests an evidentiary hearing under Section 2254(e)(2), but does not specify what he hopes to accomplish at such a hearing. Federal habeas courts are not an alternative forum for trying issues and facts that a habeas petitioner did not pursue at the state

court level. *See Williams*, 529 U.S. at 437; *see also Boyko v. Parke*, 259 F.3d 781, 789-90 (7th Cir. 2001)(federal habeas court's ability to hold evidentiary hearing for petitioner to supplement an underdeveloped state court record is "severely circumscribed"). Section 2254(e)(2) provides that, if a factual basis of a claim was not developed in the state court, the federal habeas court "shall not hold an evidentiary hearing" unless the habeas petitioner can show:

(A) the claim relies on -

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

Rather than develop his argument under the above requirements, Easley cursorily maintains in various places throughout the petition, and completely without any argument, that he is entitled to an evidentiary hearing. Accordingly, Easley has failed to argue any facts to satisfy Section 2254(e)(2)'s strict standards. Easley's request for an evidentiary hearing is therefore denied.

## CONCLUSION

For the reasons stated above, the court denies Easley's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This case is terminated and any pending motions are denied as moot. The court wishes to express its appreciation to petitioner's counsel, Stephen E. Eberhardt

and Sharon A. Hicks, for their commendable efforts on behalf of Mr. Easley, and to all counsel

for prosecuting this challenging and voluminous case in a highly professional, thorough manner.

**ENTER:**      **February 24, 2004**

**Robert W. Gettleman**
**United States District Judge**